2007 BNH 016
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                          Bk. No. 06-10742-MWV
                                                                Chapter 7
Aric N. Graham
and Darcy L. Graham,
       Debtors

Netria Corporation,
       Plaintiff

v.                                                              Adv. No. 06-1296-MWV

Aric N. Graham,
       Defendant

*Cameron G. Shilling, Esq.*
*Cheryl C. Deshaies, Esq.*
*McLane, Graf, Raulerson & Middleton, P.A.*
*Attorneys for Plaintiff*

*Aric N. Graham*
*Pro Se*

## MEMORANDUM OPINION

Before the Court are three motions filed by the Plaintiff, Netria Corporation ("Netria"). Netria sued the Defendant, Aric N. Graham ("Graham") on several grounds, including misappropriation of trade secrets, in the Rockingham County Superior Court, which granted summary judgment in favor of Netria on the misappropriation count and ordered sanctions against Graham for spoliation of evidence. The automatic stay has prevented the superior court from determining the amounts of Graham's liability and from entering a final judgment. Netria filed in this Court (1) a motion for summary judgment seeking a determination that the unliquidated debt owed it is excepted from discharge under section 523(a)(6),[1] (2) a motion for relief from the automatic stay pursuant to section 362(d)(1) in order to allow the superior court

---

[1] All statutory section references herein are to the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101–1532.

to enter final judgment and determine the amounts of Graham's liability, and (3) a motion to strike Graham's answer pursuant to Federal Rule of Civil Procedure 12(f). For the reasons set forth below, all of Netria's motions are granted.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND[2]

Netria is an electronics broker based in Exeter, New Hampshire. Netria receives orders for computer components and fills the orders by procuring the components from its vendors. Graham worked for Netria as a salesperson for approximately one year and voluntarily resigned on October 18, 2005, the same day he began working for First Trade Solutions, Ltd. ("First Trade"), a direct competitor of Netria. First Trade is based in Dover, New Hampshire. The controversy herein arose primarily from Graham's actions in the days surrounding his change of employment.

On October 18, Graham went to Netria at 6:00 a.m.—earlier than he normally arrived—knowing that few people would be there. On that morning or on one of the preceding few days, Graham set up a Yahoo! email account and transferred from his Netria computer to his Yahoo! account Netria's pricing information, information regarding vendors of computer equipment, and information regarding customers that Graham had been working with on behalf of Netria. In the days leading up to his departure, Graham also threw away information and deleted emails and other electronic data concerning customers he sold to

---

[2] The facts relied upon by the Court are mainly taken from Graham's deposition (Pl.'s Ex. F) and the superior court's orders (Pl.'s Exs. B & E). Graham has not disputed these facts or any other facts cited herein.

as a representative of Netria. Soon after leaving Netria around 6:30 that morning, and prior to resigning, Graham went to First Trade's offices and sent one email to three or four of the biggest customers he had been working with. The text of the email essentially read as follows:

> Good Morning,
>
> This is Aric Graham formerly of Netria Corporation. I have recently moved to a different company called First Trade Solutions in Dover NH (about 20 minutes from Netria). I have not officially quit at Netria yet but will be doing so later this afternoon. I wanted to give you my new contact information for you to get in touch with me. See below for email and phone number. Also, please DON'T mention anything to Netria at this time or email or call for me at Netria Corp. It will be official later today. All your terms, Net30, credit line and everything will be the same here at First Trade, however, I will have about 5-7 MORE vendors I can buy product from at this time. I will call each of you later with the reason for leaving (which was my decision and not Netria's). If you also RECEIVE any phone calls or emails from Netria, I am no longer in the office so please ignore them, and contact me at this email address. They will respond to your emails as if I was still there, but not tell you I am gone. I hope all of you will be on board as this will be a better opportunity for myself, but as well for you with more buying power I now have! Please call with any questions.
>
> Well have a good day!
> Thanks
> Aric Graham
> First Trade Solutions
> [contact information]

(Pl.'s Ex. G).

In addition to sending the email to three or four customers, Graham downloaded the pricing information, vendor information, and customer information from his Yahoo! account to his First Trade computer. The pricing information was apparently comprised mainly of a listing of the prices that Netria charged customers for computer equipment. The vendor information included vendors from whom Netria could purchase computer equipment. The customer information included contact information, buying history, and future needs. Although Graham is no longer employed by First Trade, he acknowledged in his deposition that several of the customers cultivated by Netria did business with him after he moved to First Trade.

On or about November 10, 2005, weeks after Graham began working for First Trade, Netria filed an eight-count complaint in superior court against Graham, First Trade, and two other individuals involved with First Trade. (Pl.'s Ex. A.) Netria alleged conversion and replevin, three varieties of breach of contract, misappropriation of trade secrets, breach of fiduciary duty, intentional interference with contract, and unfair competition. Except for the three breach of contract claims, all counts pertained to Graham. On December 5, 2005, the superior court issued a "Temporary Restraining Order and Order for Discovery and Hearing" that had been agreed to by the parties. (Pl.'s Ex. I.) The restraining order directed the defendants, in great detail, not to destroy any evidence, including electronic data existing in computers.

In addition to damages, Netria's complaint sought a preliminary and permanent injunction against Graham and one other individual. The superior court entered the preliminary injunction against Graham, ordering him to "return all information, documents and electronic data that Graham took from [Netria,]" and enjoining him "from contacting any and all customers with whom he had contacted [sic] while employed by [Netria]." (Pl.'s Ex. B.) In its order, the court found that the information taken and used by Graham "falls into the category of confidential and protected information" and that Netria "has shown that it is likely to succeed on the merits of its claim that its customer and vendor information is a trade secret." (Id.) Additionally, the superior court found that Graham intentionally and wrongfully deleted over 10,000 emails from his First Trade computer between October 18, 2005 and October 31, 2005, stating, "[Graham] claims he deleted the emails as part of his practice to do routine maintenance on his computer, and that the deletion was both unintentional and innocent. Nothing could be further from the truth, given Graham's double deletion of electronic data, the large quantities of data deleted on discrete and noteworthy dates, and the use of de-fragmentation and erasing programs to destroy the data." (Id.) The court concluded that sanctions were appropriate for this spoliation because Graham "knew [that this information] had been requested in discovery by [Netria] and would likely be evidence in this case." (Id.) Consequently, the court stated that it would instruct the jury that it may infer that the destroyed

information would establish that Graham took the confidential information from Netria and used it to solicit and serve customers for First Trade. (Id.) The amount of the sanctions was to be determined following an evidentiary hearing.

Next, Netria moved for summary judgment in superior court on Count V of its complaint. Count V alleges that Graham misappropriated Netria's trade secrets. Graham did not file an objection to the motion for summary judgment, though it appears that he was represented by counsel. On June 8, 2006, the superior court granted Netria's motion, stating that it found for Netria on liability and that a hearing on damages would follow.

That hearing has not been held because the superior court proceedings were stayed by section 362 of the Bankruptcy Code upon Graham and his wife filing a voluntary Chapter 7 bankruptcy petition on June 29, 2006. Netria subsequently commenced an adversary proceeding in this Court and filed a complaint and a motion for summary judgment seeking a determination that the unliquidated debt for misappropriation and the sanctions for destroying evidence are excepted from discharge under section 523(a)(6). Graham's answer to the complaint hardly addresses the merits, rather, it accuses Netria of illegal practices that are irrelevant to the matters at hand. In response, Netria filed a "Motion to Strike Defendant's 'Answer' and to Physically Remove It from the Docket" ("Motion to Strike"), to which Graham filed an objection similar in nature to his answer. Graham has not filed an objection to Netria's motion for summary judgment. Finally, Netria filed a motion for relief from the automatic stay to allow the superior court to determine the amount of Graham's liability and to enter a final judgment. Graham's answer to this motion resembles his other pleadings. The Court held a hearing on November 14, 2006, to

consider Netria's three motions and Graham's responses thereto.³ After hearing the parties, the Court took the matters under advisement.⁴

## DISCUSSION

A.    Motion for Summary Judgment: Section 523(a)(6)

"Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's 'fresh start' policy and the claimant must show that its claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a)." Century 21 Balfour Real Estate v. Menna (In re Menna), 16 F.3d 7, 9 (1st Cir. 1994). Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

1.    Summary Judgment Standard

Summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In this context, 'genuine' means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 38 (1st Cir. 1993) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)). "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). Courts faced with a motion for summary judgment should read the "record in the light most flattering to the nonmovant and

---

³ At the hearing, Netria made an oral motion to also strike Graham's responses to the motion for relief and the motion to strike.

⁴ The Court notes that Graham and his co-debtor wife were represented by an attorney throughout much of the their bankruptcy case. The attorney filed a motion to withdraw on the same day as the November 14 hearing, and her motion states that Graham "has indicated a desire to represent himself in connection with" the adversary proceeding. (Ct. Doc. No. 28.) Although the attorney was present at the hearing, Graham proceeded *pro se*.

indulg[e] all reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

2. Collateral Estoppel

Netria argues that the superior court found Graham's conduct to be willful and malicious, and, therefore, under the doctrine of collateral estoppel the superior court's findings have preclusive effect in this Court. Collateral estoppel, or issue preclusion, is applicable in exception to discharge proceedings, Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991), and the superior court's findings will be preclusive if the following four elements are satisfied: (1) both the superior court proceedings and the exception to discharge proceedings involve the same issue of law or fact; (2) the parties actually litigated the issue in the superior court; (3) the superior court actually resolved the issue in a final judgment; and (4) resolution of the issue was essential to its judgment. Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 978 (1st Cir. 1995).

Despite Netria's arguments, the Court is not convinced that the superior court found that the injury inflicted by Graham was willful and malicious. Although the superior court determined that Graham misappropriated trade secrets, not all misappropriation of trade secrets is willful and malicious under New Hampshire law, as N.H. Rev. Stat. Ann. ch. 350-B:3 provides that a state court may provide exemplary damages "[i]f willful and malicious misappropriation exists." The superior court has not yet determined the amount of damages, and has not yet determined whether Graham's misappropriation was willful and malicious.

Nonetheless, based on the record before it and for the reasons set forth below, the Court concludes that Graham inflicted a willful and malicious injury.

3. Willful and Malicious Injury

In order to prevail under section 523(a)(6), each of the following four elements must be proved by a preponderance of the evidence:

1. the debtor injured another entity or the property of another entity
2. willfully
3. and maliciously,
4. and, by such injury, gave rise to the debt at issue.

M & I Heat Transfer Prods., Ltd. v. Gorchev (In re Gorchev), 275 B.R. 154, 165 (Bankr. D. Mass. 2002).

First, there is no question that Graham injured Netria—the superior court has determined that Graham misappropriated trade secrets.

Second, an injury is willful, for purposes of section 523(a)(6), if it is inflicted "either with intent to cause the harm complained of, or in circumstances in which the harm was certain or almost certain to result from debtor's act." In re Jones, 300 B.R. 133, 140 (B.A.P. 1st Cir. 2003) (citing Printy v. Dean Witter Reynolds, Inc., 110 F.3d 853, 859 (1st Cir. 1997)). The injury, not the act, must be willful, as injuries arising from negligent or reckless conduct are not excepted from discharge under section 523(a)(6). Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998).

Graham specifically intended to lure customers away from Netria, for the benefit of himself and First Trade and to the obvious and unavoidable detriment of Netria. In his deposition, Graham admitted to sending the above-referenced email to some of his biggest customers, stating, "I probably sent it to a couple of different customers. My three – four big ones." In a further attempt to sever the relationships between those customers and Netria, Graham threw away hard copies of customer files, and deleted electronic data and emails containing, *inter alia*, customer contact information. Graham knew that the customer information was confidential and valuable to Netria, and he knew that without this information Netria could not service those customers. Graham knew that the vendor information and Netria's pricing information would allow First Trade to benefit at Netria's expense. Even if the Court indulges Graham's explanation that he did not know that what he was doing was wrong, he nonetheless was aware of the certainty of injury that would result if he was successful in luring customers away from Netria. Thus, even considering Graham's motives in the light most favorable to him, it is beyond question that Graham

intended to inflict the very injury he inflicted. Netria's injuries were not negligently or recklessly inflicted.

Third, an injury is malicious if it is "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." Printy v. Dean Witter Reynolds, Inc., 110 F.3d at 859. Almost every step Graham took indicates that what he did was wrongful. He set up a temporary email account, went to Netria early in the morning, transferred valuable information from his Netria computer to his Yahoo! account and from the Yahoo! account to his First Trade computer, and sent solicitous emails to important customers from First Trade—while he was still employed by Netria. All the while he destroyed and deleted evidence of his actions, even after being ordered not to do so by the superior court. Graham admitted in his deposition that his actions were unethical.

Graham offers as justification that he did not sign a non-competition agreement with Netria, that he thought the customers he solicited were his rather than Netria's, and that the alleged criminal acts of Netria give Netria unclean hands. First, the wrongfulness of his actions is not mitigated by the absence of a non-competition agreement. Certainly, the absence of such an agreement did not preclude the superior court from finding that Graham misappropriated trade secrets. Second, the secretiveness of his actions belie Graham's statement in his answer that, "I had known what I was doing was wrong [sic], I would never have done it." (Ct. Doc. No. 11, at 7.) Even if he honestly thought that the customers were his to bring to First Trade, his ignorance would not justify his actions. Finally, the allegations made by Graham are not relevant to the whether his misappropriations caused a willful and malicious injury, and the doctrine of unclean hands applies only when the plaintiff has acted unethically or in bad faith with regard to the subject matter of the complaint, which is not the situation here. Graham's allegations are unrelated to the misappropriation of trade secrets.

Finally, as for the connection between the injury and the debt, the injuries inflicted by Graham gave rise to the misappropriation damages as well as to the discovery sanction and any exemplary damages to be awarded by the superior court. The discovery sanction not only arises from Graham's

misappropriation, as Graham was trying to conceal his misappropriation by continuing to delete emails and electronic data related to Netria's vendors and customers and Graham's dealings with them. The superior court concluded that that Graham's actions were neither "unintentional" nor "innocent." (Pl.'s Ex. B.) The discovery sanction is clearly ancillary to—not attenuated from—the compensatory damages to be awarded for misappropriation. See The Spring Works, Inc. v. Sarff (In re Sarff), 242 B.R. 620, 628 (B.A.P. 6th Cir. 2000) (holding that discovery sanctions are nondischargeable under section 523(a)(6) along with compensatory and punitive damages for breach of duty of loyalty and misappropriation of trade secrets); Florida v. Ticor Title Ins. Co. of Cal. (In re Florida), 164 B.R. 636, 639 (B.A.P. 9th Cir. 1994) (affirming nondischargeability under section 523(a)(6) of discovery sanctions as ancillary to the underlying debt that partake in the character of the underlying debt). Therefore, the discovery sanction and exemplary damages, if any, are excepted from discharge under section 523(a)(6) along with compensatory damages for misappropriation. See In re Sarff, 242 B.R. at 627 ("Punitive damages stemming from the same 'wilful and malicious injury' as a nondischargeable compensatory damages judgment are likewise nondischargeable."); In re Florida, 164 B.R. at 639 (same); Pettey v. Belanger, 232 B.R. 543, 547–48 (D. Mass. 1999) (same).

      Based on the foregoing, the Court finds that the injuries inflicted by Graham were willful and malicious. There is no material fact in dispute and, even upon consideration of the evidence and Graham's statements in a light most favorable to Graham, Netria is entitled to judgment as a matter of law. Netria's motion for summary judgment is granted.

B.     Motion to Strike

      Netria filed a timely motion to strike Graham's answer and remove it from the docket. Pursuant to Rule 12(f), which is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b), the Court, on its own initiative or upon a timely motion, "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Graham's answer hardly responds to the allegations set forth in Netria's complaint. Rather,

Graham mainly discusses his reasons for filing for bankruptcy protection and repeatedly alleges criminal activity on the part of Netria.[5] Graham also discusses an unrelated lawsuit that has been brought against Netria; he even attached the complaint from that suit as an exhibit to his answer. Unfortunately for Graham, the alleged wrongdoing does not even tangentially relate to Graham's misappropriation of trade secrets. Moreover, Netria's hypothetical guilt would not provide a defense for Graham on the misappropriation matter. Because the allegations made by Graham are immaterial and impertinent to the subject of Netria's complaint, and are largely scandalous, Netria's motion is granted, and the answer shall be removed from the docket. See Wolfson v. Sriberg (In re Sriberg), 49 B.R. 80, 81 (Bankr. D. Mass. 1984) ("A motion to strike should not be granted unless the allegations clearly have no bearing on the matter being litigated.").

At the hearing, Netria requested that Graham's objections to its motion to strike and motion for relief from the automatic stay also be stricken. Graham's objections to these motions are almost identical to each other (and similar to the answer) and neither responds to the substance of the motions to which they object. For the reasons cited above, Graham's objections to Netria's motion to strike and motion for relief from the automatic stay are also stricken and shall be removed from their respective dockets.

---

[5] The only relevant statements in Graham's answer are as follows:

> I was under the impression that if I do not have a non-compete agreement in place, I am free to compete. I never intended to cause harm and certainly never was willful to cause harm to Netria and/or malicious in my actions.
>     . . . .
> . . . I was unaware of the law and was under the impression that since there was no non-compete agreement between myself and Netria, I was free to compete and work with my customers. I had known what I was doing was wrong [sic], I would never have done it.

(Ct. Doc. No. 11, at 5, 7.) Graham also denies deleting emails from his First Trade account, the basis of the superior court's sanctions. (Id. at 6). However, the superior court made detailed, credible findings to the contrary that preclude this Court from considering the issue anew. (Pl.'s Ex. 2.)

C.  Motion for Relief from the Automatic Stay

Netria seeks relief from the automatic stay in order to proceed with its superior court case. Specifically, the superior court has yet to determine the amounts for which Graham is liable and enter a final judgment. In light of this Court's determination that Graham's liabilities to Netria are excepted from discharge, cause exists to terminate the automatic stay pursuant to section 362(d)(1). Netria's motion is granted.

## CONCLUSION

Graham's liability to Netria for debts arising from Graham's misappropriation of trade secrets and destruction of evidence are excepted from discharge under section 523(a)(6), and, therefore, Netria's motion for summary judgment is granted. Netria's motions to strike Graham's answer, objection to the motion for relief from the automatic stay, and objection to the motion to strike are granted. Netria's motion for relief from the automatic stay is granted. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order in the case in chief and a final judgment in the adversary proceeding consistent with this opinion.

DATED this 8th day of March, 2007, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge